IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WESLEY GIBSON, | ) |
| | ) |
| Plaintiff, | ) No. 20-CV-1069 |
| | ) |
| v. | ) Judge Elaine E. Bucklo |
| | ) |
| CHUBB NATIONAL INSURANCE COMPANY, | ) Magistrate Judge Jeffrey I. Cummings |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

I. INTRODUCTION

Plaintiff Wesley Gibson purchased an insurance policy from defendant Chubb National Insurance Company for a house owned by him in Carbondale, Illinois. On October 22, 2019, lightning struck Gibson's house and sparked a fire which destroyed the house and its contents. Gibson filed this diversity action against Chubb alleging that it failed to fully reimburse him for the valuable articles and home contents that were destroyed by the fire as required by his insurance policy. In his complaint, Gibson alleges claims for breach of contract, the violation of Section 155 of the Illinois Insurance Code (215 ILCS 5/155), and the violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act (815 ILCS 505/1 *et seq.*), and he seeks damages in excess of $4 million. (Dckt. #1).

Gibson filed a motion to compel seeking the production of documents that he claims were improperly withheld from production by Chubb. (Dckt. #29, 30). After the motion was filed, Chubb disclosed 107 pages of documents that it had previously withheld as privileged and filed a response asserting that it need not produce anything further. (Dckt. #36). After Gibson filed his reply, the parties filed a sur-reply, supplements, and ancillary motions concerning the issues

1

raised by the motion to compel. (Dckt. ##39, 40, 42, 45, 67, 68, 89). The Court held a telephonic status conference on the motion on August 23, 2021 and directed Chubb to submit its updated privilege log and certain contested documents for *in camera* review. (Dckt. #91). Gibson thereafter filed a response to the explanatory email that Chubb provided to the Court with its updated privilege log and Chubb, in turn, filed a reply to Gibson's response to the email. (Dckt. #93, 105). This matter is ripe for disposition and the Court grant's Gibson's motion in part and denies it in part for the reasons stated below.

II. ANALYSIS

In his motion to compel, Gibson asserts that Chubb failed to meet its burden of proof of establishing that the withheld documents are privileged through its generic assertions of privilege in its privilege log and that Chubb improperly withheld and/or redacted: (1) communications with outside counsel where counsel was acting to make business decisions; (2) documents that do not reflect communications with outside counsel under a claim of attorney-client privilege; (3) reserve information; and (4) reinsurance information under a claim of insurer-insured privilege.[1] In its reply, Gibson further asserts that Chubb has waived any attorney-client privilege that might otherwise exist over the majority of the documents he seeks by disclosing those documents to persons outside its corporate "control group."[2] The parties dispute which

---

[1] Gibson has withdrawn his claim that Chubb improperly withheld file notes and communications with or about Chubb's subrogation counsel. (Dckt. #93 at 3). Accordingly, any documents which concern only Chubb's subrogation counsel need not be produced and Chubb may redact information concerning subrogation counsel from documents that are otherwise subject to production under this ruling.

[2] Chubb sought to strike Gibson's waiver argument based on its own "waiver of waiver" argument: namely, that Gibson waived his waiver argument by waiting until his reply brief to assert it. (Dckt. #40, 45). The Court denied Chubb's motion to strike but permitted Chubb to file a supplemental memorandum to address the substance of Gibson's argument that Chubb waived its attorney-client privilege by disclosing otherwise privileged information to persons beyond its control group to foreclose any prejudice that Chubb might otherwise suffer on account of the timing with which Gibson asserted his waiver argument. (Dckt. #86). Chubb timely filed its supplemental memorandum on this issue. (Dckt. #89).

state's law governs the resolution of their dispute regarding the scope of Chubb's attorney-client privilege and they disagree about whether the reserve and reinsurance information is relevant to their claims or defenses and therefore discoverable under Rule 26(b)(1).

> A. **Illinois law governs the resolution of the attorney-client privilege issues in this case.**

The parties dispute whether Illinois law or New York law provides the applicable attorney-client privilege law in this case. In a diversity action such as this one, the forum state's choice of law rules determine which state's law will apply. *See, e.g., Sound of Music Co. v. Minnesota Min. & Mfg. Co.,* 477 F.3d 910, 915 (7th Cir. 2007) (citing cases); *Rawat v. Navistar Int'l Corp.,* No. 08 C 4305, 2010 WL 1417840, at *3 (N.D.Ill. Apr. 7, 2010) (same). Illinois follows the Restatement (Second) of Conflict of Laws §139 when resolving conflict-of-laws questions concerning privileged communications. *Sterling Finance Management L.P. v. UBS PaineWebber, Inc.,* 782 N.E.2d 895, 903-04 (Ill.App.Ct. 2002), *overruled in part on other grounds, Bridgeview Health Care Center, Ltd. v. State Farm & Cas. Co.,* 10 N.E.3d 902 (Ill. 2014).

This Court must rely on the Restatement to perform a conflict-of-laws analysis because there is an actual conflict between the laws of Illinois and New York regarding attorney-client privilege in the sense that the choice of law would be outcome determinative. *See Sterling Finance,* 782 N.E.2d at 899, 902; *Fed. Deposit Ins. Corp. for Valley Bank v. Crowe Horwath LLP,* No. 17 CV 04384, 2018 WL 3105987, at *11 (N.D.Ill. June 25, 2018) (citing *Sterling Finance*). As Chubb explained in its supplemental submission, New York has a "broader corporate attorney-client privilege" than Illinois, which recognizes the need for corporate employees to discuss advice received by an agent of the corporation without regard to whether the employees are members of a "control group" of senior decisionmakers. (Dckt. #89 at 4-5

(citing to *Scott v. Chipotle Mexican Grill, Inc.,* 94 F.Supp.3d 585, 598 (S.D.N.Y. 2015)). Illinois, by contrast, relies on the "control group" test. *Sterling Finance,* 782 N.E.2d at 900. The distinction between the laws of the respective states, as Chubb asserts, "is of incredible importance here." (Dckt. #106 (Transcript of the August 23, 2021 hearing) at 30).

The first step under Section 139 of the Restatement is to determine which state has "the most significant relationship to the documents and the communications at issue." *Id.*; *Rawat,* 2010 WL 1417840, at *3. The state which has the most significant relationship "'will usually be the state where the communication took place, which . . . is the state where an oral interchange between persons occurred, where a written statement was received or where an inspection was made of a person or thing.'" *Rawat,* 2010 WL 1417840, at *3, *quoting* Restatement (Second) of Conflict of Laws §139(2), cmt. e.

Chubb asserts that New York has the most significant relationship based on the declarations of Kurt Chapin, the Vice President and Chief Technical Officer for property claims for all of the companies within the Chubb insurance group. Chapin declares that while in New York he: (1) contacted an attorney from Chubb's outside coverage counsel (attorney Todd Schenk of Tressler LLP) by telephone and email to retain him on behalf of Chubb to provide a formal, legal opinion on the application and enforceability of the business property exclusion in Gibson's insurance policy; (2) received Schenk's formal legal opinion; and (3) arranged for telephonic meetings with Schenk and other Chubb employees to discuss the legal opinion with Schenk. (Dckt. #89-1 at 2-3; Dckt. #105-1 at 1). Although Gibson quibbles with Chapin's testimony,[3] he has not established that Illinois had a more significant relationship with the

---

[3] *See* Dckt. #106 at 24-28. Gibson also focuses on the fact that the loss occurred in Illinois. (*Id.,* at 25, 28). Although Illinois's connection to the loss is a factor in the overall analysis, it does not bear on the question of which state has the most significant relationship to the documents and communications in the first instance.

communications than New York. Consequently, the Court finds that New York has the most significant relationship within the meaning of the Restatement.

"The law of the state with the most significant relationship, however, does not necessarily govern the admissibility issue." *Sterling Finance,* 782 N.E.2d at 904. Section 139 of the Restatement provides, in pertinent part, that:

> '(2) Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged under the local law of the forum *will be admitted* unless there is some special reason why the forum policy favoring admission should not be given special effect.'

*Id.*, *quoting* Restatement (Second) of Conflict of Laws §139(2) (1971) (emphasis added by *Sterling Finance*). As the Illinois Appellate Court recognized, "Comment *d* to subsection 139(2) acknowledges the 'strong policy' a forum state has in disclosing 'all relevant facts that are not privileged under its own law.' . . . Therefore, under section 139(2), a forum state *will* admit evidence that is not privileged under its local law, *unless* it finds that the local policy favoring admission is outweighed by countervailing considerations, *i.e.,* some 'special reason.'" *Id.* (emphasis in original; citation omitted). "In determining whether a 'special reason' exists to exclude evidence, the forum will consider: (1) the number and nature of the contacts that the state of the forum has with the parties and with the transaction involved; (2) the relative materiality of the evidence that is sought to be excluded; (3) the kind of privilege involved; and (4) fairness to the parties." *Allianz Ins. Co. v. Guidant Corp.,* 869 N.E.2d 1042, 1058 (Ill.App.Ct. 2007); *Sterling Finance,* 782 N.E.2d at 904.

Here, the forum state (Illinois) has several connections to the parties and the underlying events. In particular, Gibson's now-destroyed house was located in Illinois, Chubb provided insurance coverage on this Illinois property, and Chubb is accused of violating Illinois law. Thus, the first factor weighs in favor of the application of Illinois law. *See, e.g., People v. Allen,*

5

784 N.E.2d 393, 395 (Ill.App.Ct. 2003) (Illinois has significant contact with the case where the offense occurred in Illinois, defendant was accused of violating Illinois law, and the parties were either an Illinois resident or the state itself); *Swanson v. Murray Bros, LLC,* No. 19-CV-3220, 2021 WL 2312872, at *3 (C.D.Ill. June 7, 2021) ("Illinois has a strong interest in determining liability for the injuries that resulted in the Collision that occurred in Illinois"). The second factor, namely, whether the evidence sought to be excluded is material, also weighs in favor of the application of Illinois law. As Chubb acknowledges, the information Gibson seeks to obtain from the documents and communications concerns the manner in which Chubb handled and evaluated his claim. (Dckt. #89 at 6). This evidence is material to Gibson's claims. *See Swanson,* 2021 WL 2312872, at *3.

The remaining two factors, however, favor the application of New York law. The attorney-client privilege is well established in New York and the fact that Illinois's control group test is not widely accepted weighs against the application of Illinois law. *Allianz Ins.,* 869 N.E.2d at 1060; *Allen,* 784 N.E.2d at 395 ("A foreign privilege of a type that is well established is entitled to more deference than one that is relatively novel."). Regarding the final factor, fairness to the parties, "the Restatement advises that the forum will be more inclined to give effect to a privilege if it was probably relied upon by the parties." *Allianz Ins.,* 869 N.E.2d at 1060. To this point, Chapin stated in his declaration that he believed New York's law on corporate attorney-client privilege applied because he was in New York. (Dckt. #89-1 at 3).

Where, as here, some factors favor the application of Illinois law and some favor the application of foreign law, Illinois courts have repeatedly found that there is no "special reason" for overriding Illinois's policy favoring the admission of evidence that would be precluded by the foreign law. *See, e.g., Allianz Ins.,* 869 N.E.2d at 1060; *Allen,* 784 N.E.2d at 396. Such a

6

holding "promotes Illinois's discovery-orientated view of the attorney-client privilege and the work-product doctrine." *Allianz Ins.,* 869 N.E.2d at 1060 (citing to *Sterling Finance,* 782 N.E.2d at 905). Indeed, in the course of deciding that the attorney-client privilege law of Illinois should govern instead of the law of New York, the Illinois Appellate Court stated as follows in *Sterling Finance*:

> In view of the fact that Illinois does recognize the privilege, in the first instance, but construes it strictly in the corporate context, we cannot foresee *any situation* where a special reason would exist not to give effect to this clear, strongly articulated policy in favor of another state's broader corporate attorney-client privilege. We conclude that Illinois law governs the attorney-client privilege issue here.

*Sterling Finance,* 782 N.E.2d at 905 (emphasis added).

Notwithstanding the above authority from the Illinois courts, Chubb relies on the federal decision in *Equity Residential v. Kendall Risk Management, Inc.,* 246 F.R.D. 557 (N.D.Ill. 2007), to support its argument. (Dckt. #89 at 2-5). In that case, the court applied Section 139 of the Restatement and concluded that there was "special reason" to apply the broader corporate attorney-client privilege recognized by Connecticut rather than the narrow Illinois control group test because most of the documents originated from Connecticut and were created by Connecticut residents, Connecticut's broader attorney-client privilege was "well recognized," and the individuals making the communications likely relied on Connecticut law. *Equity Residential*, 246 F.R.D. at 565-66. In essence, the court relied on the fact that Connecticut had the most significant relationship with the communications at issue and a showing that two of the four relevant factors (namely, the type of privilege and fairness to the parties) favored the application of Connecticut law to find a "special reason" not to apply Illinois's corporate attorney-client privilege law.

7

In reaching its holding, the *Equity Residential* court failed to mention, let alone distinguish, the prior contrary holdings in *Sterling Finance*, *Allianz Ins.,* and *Allen*[4] and it further failed to consider the "strong policy" that Illinois – as the forum state – has in "disclosing 'all relevant facts that are not privileged under its own law.'" *Sterling Finance,* 782 N.E.2d at 904, *quoting* Restatement (Second) of Conflict of Laws §139, Comment *d* at 387 (1971); *Crowe Horwath,* 2018 WL 3105987 at *11 (noting that Illinois has a strong policy favoring discoverability). For these reasons, this Court respectfully declines to follow *Equity Residential* and it instead follows the Illinois decisions for guidance on how to resolve the conflict-of-laws issue in this case. Accordingly, this Court finds that there is no "special reason" not to give effect to Illinois's corporate attorney-client privilege law.

> **B.** **Chubb has waived any attorney-client privilege that otherwise existed over most of the documents at issue by disclosing them to persons outside of its corporate control group.**

Under Illinois law, Chubb may establish its attorney-client privilege:

> (1) Where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are permanently protected, (7) from disclosure by himself or the legal advisor, (8) except the protection be waived.

*Illinois Educ. Ass'n v. Illinois State Bd. of Educ.,* 791 N.E.2d 522, 529 (Ill. 2003); *Consolidation Coal Co. v. Bucyrus-Erie Co.,* 432 N.E.2d 250, 257 (Ill. 1982) (the party claiming the privilege has the burden of establishing that it exists). The parties dispute whether Chubb has met its burden of establishing that the communications are protected by the attorney-client privilege in the first instance. Gibson also asserts that Chubb has waived any attorney-client privilege that

---

[4] This is somewhat puzzling because the court did cite to *Sterling Finance* and *Allen* for proposition that Illinois relies on Section 139 of the Restatement to resolve choice-of-law questions for privileged communications. *Equity Residential,* 246 F.R.D. at 564.

otherwise existed over most of the documents by disclosing them to persons outside of Chubb's corporate control group. The Court will first address the issue of waiver.

Under Illinois law, courts must define which employees qualify as the "client" such that communications between an attorney and those employees will qualify for the attorney-client privilege. *Doe v. Twp. High Sch. Dist. 211,* 34 N.E.3d 652, 673 (Ill.App.Ct. 2015). This is so because "not every communication made to a corporation's attorney by an employee of the corporation is privileged but, rather, the corporat[e] attorney-client privilege applies only to those employees within the control group." *Sterling Finance,* 782 N.E.2d at 900. In addition to top management, the control group also includes "any employee 'whose advisory role to top management in a particular area is such that a decision would not normally be made without his advice or opinion, and whose opinion in fact forms the basis of any final decision by those with actual authority.'" *Id., quoting Consolidation Coal,* 432 N.E.2d at 258. It is well-settled that "[d]istribution of otherwise privileged materials to individuals outside the corporation's control group destroys the privilege." *Id.,* at 905; *Midwesco-Paschen Joint Venture For Viking Projects v. Imo Indus., Inc.,* 638 N.E.2d 322, 329 (Ill.App.Ct. 1994).

In this case, Chubb has identified a corporate control group consisting of Kurt Chapin, James Hamilton, Terrance Young, and persons above them in the corporate organization (which would include Hamilton's supervisor Joseph Smith, Chubb's Senior Vice President, Claim Leader, National Field Property Claims). (Dckt. #106 at 11-13). A review of Chubb's June 14, 2021 privilege log shows that, although a number of the documents at issue were maintained within Chubb's control group, most of the others were shared with identified Chubb employees who are outside of the control group. (*See* Dckt. #67 at 8-12 (identifying Chubb employees outside the control group who received documents that Chubb claims are privileged)). Chubb's

9

privilege is waived with respect to documents shared with these individuals. *Sterling Finance,* 782 N.E.2d at 905.

The Court notes that certain privileged documents on Chubb's log appear, at first glance, to have been shared only within the control group. Upon closer inspection, however, it is clear these documents were shared with other employees as well. In particular: (a) the November 6, 2019 email referenced at the top of page five of the log (3030-3031)[5] was forwarded to non-control group individuals on January 9, 2020 (3030); (b) three otherwise privileged December 23, 2019 emails and a December 26, 2019 email noted on page five of the log (3038, 3039, 3039-40, 3040-41) were "shar[ed]" with non-control group members on February 27, 2019 (3038); (c) a December 17, 2019 email on page eight of the log (3096-98) were forwarded to at least one individual (Tim Barziza) who is not in the control group (3096, 3094-95); and (d) two November 4, 2019 emails on pages fourteen and fifteen of the log (3584-85, 3585) were forwarded to at least one individual (Bethany Maeder) who is not in the control group (3584). Any privilege that otherwise attached to any of these emails has been waived.[6]

Chubb also disseminated privileged documents to two distribution lists of Chubb employees and Chubb is presently unable to identify the employees who were on the listservs at the time the documents were disseminated. (Dckt. #92-1 at 2-3; Dckt. #93 at 2 n.2; Dckt. #106 at 19-21). Chubb's inability to identify the recipients of these documents is a fatal blow to its effort to preserve its privilege. *Pryor v. Target Co.,* No. 20-CV-28, 2020 WL 6149569, at *3

---

[5] Chubb's privilege log often cites to multiple copies of the same document. The Court will cite to the first copy of the document listed and its ruling applies to all copies.

[6] The Court notes that a number of the documents for which Chubb has waived its privilege in this fashion contain information related to subrogation counsel. *See, e.g.,* 6/14/21 privilege log at p.20 (5924-25, 5927-28, 5930-31). As stated above, Chubb must produce these documents with redactions to the portions discussing subrogation counsel.

(N.D.Ill. Oct. 20, 2020). Consequently, any privilege that might otherwise have existed over these documents is waived as well. *See, e.g., Muro v. Target Corp.,* 250 F.R.D. 350, 364 (N.D.Ill. 2007), *aff'd,* 580 F.3d 485 (7th Cir. 2009); *B.F.G. of Illinois, Inc. v. Ameritech Corp.,* No. 99 C 4604, 2001 WL 1414468, at *5 (N.D.Ill. Nov 13, 2001).

### C. Chubb is not entitled to withhold communications with its reinsurer about Gibson's claim under the insurer-insured privilege.

Chubb has withheld a number of documents reflecting communications with its reinsurer about Gibson's claim in reliance on the insurer-insured privilege. Gibson asserts that the insurer-insured privilege does not cover the documents in question and the Court agrees. "[I]n some instances the attorney-client privilege attaches to communications made between a client and a nonlawyer . . . [and] [o]ne such instance is where a communication is made between an insured and an insurer." *Exline v. Exline,* 659 N.E.2d 407, 410 (Ill.App.Ct. 1995) (citations omitted).

> In order for an insured to assert the attorney-client privilege, one need only establish: (1) the insured's identity; (2) the insurance carrier's identity; (3) *the insurance carrier's duty to defend the insured*; and (4) that a communication was made between the insured and an agent of the insurance carrier.

*Id.* (emphasis added); *Lower v. Rucker,* 576 N.E.2d 422, 423 (Ill.App.Ct. 1991)("Communications between an insured and an insurer where the insurer is under an obligation to defend the insured is privileged"); *Pryor,* 2020 WL 6149569, at *4 (same); *Ritter v. 2014 Health, LLC,* 2020 IL App (1st) 190370-U, ¶29 ("the insurer-insured privilege does not apply because the hospital did not sufficiently prove a duty to defend this lawsuit").

In this case, Chubb's effort to establish an insurer-insured privilege fails because Chubb admits that its reinsurer had no duty to defend. (*See* Dckt. #106 at 15-16). Accordingly, all documents that Chubb has withheld based on the insurer-insured privilege must be produced

11

absent some other substantiated privilege that shields the document (or portions thereof) from disclosure.

> **D. Evidence regarding Chubb's reserves is not relevant to Gibson's claim and need not be produced.**

Gibson has moved to compel Chubb to produce evidence of Chubb's reserves to support his bad faith claim. (Dckt. #106 at 17). Chubb objects to producing information, arguing it is irrelevant and not discoverable in a first party insurance[7] dispute such as the one involved in this case. The Court agrees. Several courts have held that evidence of reserves is irrelevant to a bad faith claim in a first-party insurance case. *See, e.g., Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.,* 128 F.Supp.2d 1148, 1154-55 (N.D.Ill. 2001); *Harleysville Lake States Ins. Co. v. Lancor Equities, Ltd.,* No. 13 C 6391, 2014 WL 5507572, at *7-8 (N.D.Ill. Oct. 31, 2014); *McCray v. Allstate Ins. Co.,* No. 3:14-CV-02623-TLW, 2015 WL 6408048, at *5 (D.S.C. Oct. 22, 2015). Gibson "points to no case involving first-party insurance where reserve information [wa]s discoverable or admissible," *Spearman,* 128 F.Supp.2d at 1155, and the Court denies his request to force Chubb to produce it. Accordingly, Chubb can redact its reserve information from documents that are otherwise subject to production because the claimed privileges have not been established[8] and it need not produce documents that solely concern its reserve information.[9]

---

[7] "A 'first-party' insurance contract is a contract between the insurer and insured protecting the insured's own actual losses and expenses, while 'third-party' insurance protects the insured from potential liability to a third party." *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.,* No. 2:04 CV 89, 2005 WL 8170105, at *2 (N.D.Ind. Apr. 4, 2005) (internal quotation marks omitted). Thus, Gibson's policy is a first-party insurance contract.

[8] *See* 6/14/21 log at p.1 (1016), p. 2 (2099, 2333-36, 2578), p.4 (2881, 2899), p.10 (3164-67, 3472, 2474-76, 3478, 3480-82, 3484-85).

[9] *See* 6/14/21 log at p.1 (1015), p. 2 (2131-32, 2613-14), p.3 (2026-27, 2866), p.20 (5952-56, 5964-66).

    **E.**    **Chubb has substantiated its asserted privilege(s) over a number of documents.**

This Court finds after its *in camera* review that Chubb has substantiated its claimed privilege(s) with respect to the following documents in the June 14, 2021 privilege log, in addition to those that are encompassed by the rulings above: page 2 (2579-82); page 4 (3028-29); page 5 (3032, 3032-33, 3034); page 6 (3054-55); page 8 (3082-83, 3083-84, 3102); page 9 (3102, 3103-04, 3125, 3125-26, 3139); page 10 (3139-40); page 11 (3505, 3506-21, 3522-33, 3534-39); page 18 (5680-84); page 19 (5735);[10] and page 24 (6446, 6446, and 6446-47).

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel discovery (Dckt. #29, 30) is granted in part and denied in part. Defendant shall produce the documents specified within this decision – with redactions as appropriate – by October 11, 2021.

**ENTERED:** September 27, 2021

                                                      **Jeffrey I. Cummings**
                                                      **United States Magistrate Judge**

---

[10] The Court notes that Chubb includes an October 28, 2019 email (5793) on its privilege log on the ground that it is "unresponsive." This is not a proper privilege and this document does reference "the Gibson claim." Accordingly, Chubb must produce it.