IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Wesley J. Gibson, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 20 C 1069 |
| | ) |
| Chubb National Insurance Company, | ) |
| | ) |
| Defendant. | ) |

Memorandum Opinion and Order

This insurance dispute arises from a fire at a property called "Pine Manor" located in Carbondale, Illinois, owned by plaintiff Wesley Gibson through a single-member limited liability company. Gibson claimed that a "Masterpiece" homeowner's insurance policy ("Policy") issued by defendant Chubb National Insurance Company ("Chubb") covered much of the damage to the house at Pine Manor and its contents. The parties previously filed cross-motions for summary judgment; I denied Gibson's motion and granted Chubb's in part. Dkt. No. 143. Left undecided in that opinion is whether Gibson's damaged fine art and jewelry are covered under the Policy's "Valuable Articles Coverage." The parties have briefed that issue, and for the following reasons Gibson's motion is granted in part and Chubb's motion is denied.

I.

My previous summary judgment opinion contains much of the factual background of this case. Only facts pertinent to the present motions are recounted here.

The Policy, which Gibson purchased from Chubb in 2010, provides three types of coverage for Pine Manor: (1) Deluxe House Coverage; (2) Deluxe Contents Coverage; and (3) Valuable Articles Coverage of $264,480 for jewelry and $500,000 for fine arts. Policy, Dkt. No. 1-1 at 2, 6. After a fire in October 2019 damaged Pine Manor and its contents, Gibson filed a claim seeking the full value of all three coverages. Pl.'s Statement of Material Facts ("PSMF"), Dkt. No. 168 ¶¶ 42–43. Chubb promptly paid Gibson the value of his claim under the Deluxe House Coverage, but largely denied Gibson's claims under the Deluxe Contents Coverage and Valuable Articles Coverage, which precipitated this suit. Dkt. No. 118 ¶¶ 37, 43.[1] In my previous opinion, I resolved Counts II and III of Gibson's complaint in their entirety. I also resolved much of Count I, which I allowed to proceed only as to Gibson's claim for Valuable Articles Coverage and for Deluxe Contents Coverage for contents located in areas of Pine Manor kept locked and inaccessible to guests. At issue here is Gibson's claim for Valuable Articles Coverage only.

---

[1] The parties have incorporated their previous statements of material facts.

2

The Valuable Articles Coverage provides "coverage against all risk of physical loss to your valuable articles anywhere in the world unless stated otherwise or an exclusion applies." Policy at 55. "Valuable article" is defined under the Policy as "personal property you or a family member owns or possesses for which an amount of coverage is shown in the Valuable Articles section of your Coverage Summary." *Id.* The Coverage Summary, in turn, provides for two categories of covered articles: fine arts and jewelry. *Id.* at 6.

Gibson seeks coverage for both fine arts and jewelry. *See* Dkt. No. 168-6 (Gibson's inventory of items he claims as fine arts); Dkt. No. 168-4 at 4-6 (Gibson's inventory of items he claims as jewelry). Under the Policy, "[f]ine arts" are defined as "[p]rivate collections of paintings, etchings, pictures, tapestries, art glass windows, other bona fide works of art (for example, statues, antiques, rare books and manuscripts, porcelains, rare glass, crystal), and items of historical value or artistic merit." Policy at 56. "Jewelry" is defined as "[a]n article of personal adornment containing gemstones, silver, gold, platinum, or other precious metals or alloys." *Id.*

II.

The parties dispute whether the fine arts and jewelry for which Gibson seeks coverage are "personal property" as that term appears in the Policy's definition of "valuable article." In

3

Chubb's view, the fine arts and jewelry are not "personal property" because "personal property" does not include "business property" and, like most of the other contents of Pine Manor, the claimed items were used for business purposes.

In Illinois, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 818–19 (7th Cir. 2008) (citing *Crum & Forster Managers Corp. v. Resol. Tr. Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993); additional citation omitted). "[T]he primary goal is to give effect to the intent of the parties as expressed in the agreement." *DeSaga v. W. Bend Mut. Ins. Co.*, 910 N.E.2d 159, 163 (Ill. App. Ct. 2009) (citing *Nicor, Inc. v. Assoc. Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006)). Unambiguous terms are given their plain and ordinary meaning. *Id.* at 163–64 (citing *Nicor, Inc.*, 860 N.E.2d at 286; additional citation omitted). But "insurance policies are to be liberally construed in favor of coverage," so any ambiguities are "resolved in favor of the insured and against the insurer." *Am. Econ. Ins. Co. v. DePaul Univ.*, 890 N.E.2d 582, 588 (Ill. App. Ct. 2008) (quotation omitted).

Chubb takes the position that "personal property" in the "valuable article" definition is unambiguous and that it excludes business property. In support, Chubb urges that the type of insurance policy is relevant to its interpretation. *See id.* at 587

4

(citing *Crum & Forster Managers Corp.*, 620 N.E.2d at 1078); *Westport Ins. Corp. v. Jackson Nat'l Life Ins. Co.*, 900 N.E.2d 377, 379–80 (Ill. App. Ct. 2008). Chubb cites several cases for the proposition that a homeowner's policy, like the Policy here, is generally "intended to cover the insured in his capacity as a homeowner, not in any business capacity." *Ins. Co. of Ill. v. Markogiannakis*, 544 N.E.2d 1082, 1090 (Ill. App. Ct. 1989). But the court in *Markogiannakis* simply applied an express "business pursuits" exclusion in the policy, and did not make a general pronouncement about whether homeowner's insurance policies as a general matter can ever insure business property. *Id.* at 1089–90.[2] The other cases Chubb cites in support of this point also considered insurance policies with express business-related exclusions; the disputes in those cases centered not around whether homeowner's insurance policies could cover business property, but whether the business-related exclusions precluded coverage. *See, e.g., Indus. Indem. Co. v. Vukmarkovic*, 562 N.E.2d 1073, 1074, 1080 (Ill. App. Ct. 1990) (identifying business activity exclusion in insurance policy and deciding whether events fell within that exclusion). Here, as Gibson points out, though there is a business

---

[2] Indeed, it is apparent from this case that homeowner's insurance policies can insure business property. *See* Policy at 49 (allowing for up to $25,000 of coverage for business property under Deluxe Contents Coverage).

5

property exclusion under the Deluxe Contents Coverage, there is no such exclusion under the Valuable Articles Coverage.

Chubb has other arguments, too. It reasons that because the definition of "valuable article" already clarifies that it must be property "you or a family member owns or possesses," Policy at 55, "personal property" must mean something other than personal ownership--a position Gibson advocates for--since otherwise those parts of the definition would be redundant. *See Old Second Nat'l Bank v. Ind. Ins. Co.*, 29 N.E.3d 1168, 1175 (Ill. App. Ct. 2015) ("[W]e will not interpret an insurance policy in such a way that any of its terms are rendered meaningless or superfluous."). It is possible to avoid superfluity, however, by adopting another position for which Gibson advocates: that "personal property" is simply meant to identify property other than real property.

Chubb also suggests that because Gibson's insurance agent recommended that he procure commercial property insurance, Gibson was aware that his current homeowner's policy was only sufficient to cover non-commercial property. Def.'s Statement of Additional Material Facts ("DSAMF"), Dkt. No. 178 ¶ 5. The upshot, according to Chubb, is that Gibson was or should have been aware that the Policy does not cover business property. Finally, Chubb cites several cases from state courts outside of Illinois that distinguish between "personal property" and "business property" in

6

homeowner's insurance policies. *See* Dkt. No. 169 at 7 (citing cases).[3]

On the other hand, Gibson brings forth several arguments in support of his position that "personal property" as used in the "valuable article" definition does not necessarily exclude business property. For example, as noted above, though there is a "business property" exclusion for the Deluxe Contents Coverage, there is none in the Valuable Articles Coverage.

Gibson's position is also supported by dictionary definitions of "personal property," which distinguish that type of property from "real property" rather than from business property.[4] Another

---

[3] Chubb relies on out-of-state decisions because, according to Chubb, there is "a dearth of Illinois case law discussing the distinction between 'personal property' and 'business property' in the context of a homeowner's insurance policy." Dkt. No. 169 at 5. Chubb cites only one unpublished Illinois decision. *See Neiman v. Farmers Auto. Ins. Ass'n*, 2016 WL 1168269, 2016 IL App (1st) 150302-U (Mar. 24, 2016). But because *Neiman* is unpublished, it may not be cited as precedent under Illinois Supreme Court Rule 23(e), except in circumstances not present here. *See Cary v. Ne. Ill. Reg'l Commuter R.R. Corp.*, No. 19 C 03014, 2020 WL 1330654, at *3 (N.D. Ill. Mar. 22, 2020) (citing Ill. Sup. Ct. Rule 23(e)).

[4] *See Personal Property*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/personal%20property (last accessed April 28, 2023) ("property other than real property consisting of things temporary or movable"); *Property*, Black's Law Dictionary (11th ed. 2019) (defining "personal property" as "[a]ny movable or intangible thing that is subject to ownership and not classified as real property"). When the term "personal property" is used specifically in the tax context, Black's Law Dictionary defines it as "[p]roperty not used in a taxpayer's trade or business or held for income production or collection." *Property*, Black's Law Dictionary (11th ed. 2019).

secondary source that both parties cite supports an understanding of "personal property" as meant to distinguish from "real property" in some cases, and from "business property" in others. *See* Personal versus business or commercial property, 10A Couch on Ins. § 148:13 ("'Personal property' in this sense means property used for the insured's 'personal purposes' rather than for 'business purposes.' Both types of this 'personal property' also fall within the category of 'personal property' used to distinguish real property.").

Gibson's position is further bolstered by the terms of the Deluxe Contents Coverage. That portion of the Policy applies to the "contents" of Pine Manor, defined as "personal property you or a family member owns or possesses." Policy at 46. Thus, both the Deluxe Contents Coverage and the Valuable Articles Coverage apply only to "personal property." If, as Chubb claims, "personal property" excludes any business property, then there would be no need for the business property exclusion to the Deluxe Contents Coverage. *Id.* at 52; *see Ryerson, Inc. v. Fed. Ins. Co.*, 796 F. Supp. 2d 911, 914 n.4 (N.D. Ill. 2010) ("[A]n exclusion is only relevant if the claim first falls within the insuring agreement." (citing *Cont'l Cas. Co. v. Pittsburgh Corning Corp.*, 917 F.2d 297, 300 (7th Cir. 1990), *aff'd*, 676 F.3d 610 (7th Cir. 2012))).

In sum, each party raises arguments that make the term "personal property" in this context "'reasonably susceptible to

8

more than one interpretation,'" and therefore ambiguous. *BASF AG*, 552 F.3d at 819 (quoting *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006)). Accordingly, I must construe the term in favor of coverage and find that even if the fine arts and jewelry at issue were used for business purposes, the Valuable Articles Coverage may apply. *See Am. Econ. Ins. Co.*, 890 N.E.2d at 588 ("[W]here an ambiguity exists in the insurance contract, it will be resolved in favor of the insured and against the insurer." (quotation omitted)).

## III.

That leaves the question of whether the particular fine arts and jewelry Gibson claims fall within the Valuable Articles Coverage. Under Illinois law, Gibson bears the initial burden of demonstrating these items are covered. *See Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009) ("[T]he burden is on the insured to prove that its claim falls within the coverage of an insurance policy." (citation omitted)). Where a party "seek[s] summary judgment on a claim as to which it bears the burden of proof, it must lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015) (citations omitted). Gibson has not done so here.

9

As to Gibson's claimed fine arts, much of the supporting evidence he marshals is aimed at showing he personally purchased the items and that, together with his family, he owns them. *See* PSMF ¶¶ 7–9. Some other evidence he supplies indicates that he informed Chubb that he had antiques and fine arts at Pine Manor that were damaged by the fire. *See* Pl.'s Statement of Additional Material Facts, Dkt. No. 180 ¶ 1. This evidence does not show, however, that the items for which he now seeks coverage under the Valuable Articles Coverage are fine arts as defined in the Policy. And he offers no argument that would allow me to conclude as a matter of law that the items so qualify.

Under the Policy, "fine arts" are "[p]rivate collections of paintings, etchings, pictures, tapestries, art glass windows, other bona fide works of art (for example, statues, antiques, rare books and manuscripts, porcelains, rare glass, crystal), and items of historical value or artistic merit." Policy at 56. Aside from brief descriptions of the items in an inventory list, Gibson offers neither evidence nor argument for why these items count as fine arts. *See* Dkt. No. 168-6 (offering only short descriptions of claimed fine arts items). For its part, Chubb states it is prepared to disclose an expert who will testify that many of these items do not meet the "fine arts" definition. Dkt. No. 176 ¶ 45.

Additionally, the parties dispute whether some of the claimed fine arts must be replaced or if they can be repaired, and they

further dispute the cost of replacement or repair. Gibson's inventory apparently assumes that all the items must be replaced, and he has assigned replacement values to each. *See* Dkt. No. 168-6. Chubb's expert prepared a separate assessment of whether each item must be replaced or if it can be repaired, and the associated cost. Dkt. No. 178-2 at 105.[5] Accordingly, I cannot grant summary judgment to Gibson on his claimed fine arts.

Gibson has also failed to "demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant" on his jewelry claim. *Hotel 71 Mezz Lender LLC*, 778 F.3d at 601 (citations omitted). That is because his only evidence identifying the claimed jewelry items and their estimated values is an interrogatory response in which he listed jewelry lost in the fire at Pine Manor. Dkt. No. 168-4 at 4–6.

In any event, there is a dispute of material fact as to whether Gibson kept jewelry at Pine Manor at all. Gibson testified at his deposition that he did. *See* PSMF ¶ 8 (citing portions of deposition testimony, found at Dkt. No. 168-1). But Chubb disputes this, pointing to deposition testimony by Gibson's property manager to the effect that she was unaware of any jewelry kept at

---

[5] Chubb's expert's catalog assessed every item that Gibson submitted as part of his claim, including contents he does not claim are "fine art." Items can be identified between this report and Gibson's narrower list of only the items he claims as fine art by reference to the "Item #," which is the same across both lists.

11

Pine Manor. Dkt. No. 98-2 at 54:17-19. I agree with Chubb that the outcome of the jewelry claim depends in part on a factfinder's assessment of Gibson's credibility on the issue of whether he kept jewelry at Pine Manor, and that "'a reasonable jury could return a verdict'" for Chubb. *Sentinel Ins. Co. v. Serra Int'l*, 119 F. Supp. 3d 886, 890 (N.D. Ill. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Summary judgment on this issue is therefore inappropriate.

IV.

For the foregoing reasons, I grant in part and deny in part Gibson's motion and deny Chubb's motion. Gibson is entitled to coverage under the Policy for fine arts and jewelry lost in the fire at Pine Manor, even if they were used for business purposes. But Gibson has not yet shown that the claimed items qualify as fine arts or jewelry under the Policy.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: May 1, 2023