```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION


Wesley J. Gibson,              )
                               )
        Plaintiff,             )
                               )
                               )
    v.                         )   No. 20 C 1069
                               )
                               )
Chubb National Insurance       )
Company,                       )
                               )
        Defendant.             )
```

Memorandum Opinion and Order

After a fire at a property called "Pine Manor," owned by plaintiff Wesley J. Gibson through a single-member limited liability company, Gibson sought coverage under his homeowner's insurance policy ("the Policy"), ECF 1-1, issued by defendant Chubb National Insurance Company ("Chubb"). The Policy included three relevant types of coverage: (1) Deluxe House Coverage; (2) Deluxe Contents Coverage; and (3) Valuable Articles Coverage for jewelry and fine arts. After two rounds of summary judgment, what remains are disputes over compensation Gibson is entitled to under the Valuable Articles Coverage, as well as Deluxe Contents Coverage for contents located in areas of Pine Manor kept locked and

inaccessible to guests. Before me are the parties' motions *in limine*, which I resolve as set forth below.[1]

### I. Plaintiff's Motions

**Plaintiff's Motion *in Limine* No. 1**

Gibson moves to bar evidence regarding the use of his home. The motion is denied.

The "home" Gibson refers to in this motion is Pine Manor. In granting partial summary judgment to Chubb, I held that the majority of Gibson's claim under his Deluxe Contents Coverage was cabined by the sublimit for "business property" because Pine Manor operated as a "business" under the Policy's definition and the contents of Pine Manor "were overwhelmingly used in furtherance of his rental/lodging business." *Gibson v. Chubb Nat'l Ins. Co.*, 601 F. Supp. 3d 288, 297-98 (N.D. Ill. 2022). In a subsequent opinion, I concluded that the situation was different when it came to the Valuable Articles Coverage. For that coverage, "even if the fine arts and jewelry at issue were used for business purposes, the Valuable Articles Coverage may apply." *Gibson v. Chubb Nat'l Ins. Co.*, 671 F. Supp. 3d 867, 872 (N.D. Ill. 2023). Gibson argues that, because he may be entitled to Valuable Articles Coverage for fine arts and jewelry even if those items were used as part of his

---

[1] Gibson did not number his motions, so I number them in the order in which they were filed on the docket.

2

business, evidence about his use of Pine Manor is irrelevant or, if relevant, confusing or misleading.

I agree with Chubb, however, that even if it does not matter whether the claimed fine arts and jewelry were used for business purposes, Gibson's use of Pine Manor is relevant at least to the issue of whether he kept the claimed jewelry at Pine Manor at all, which is a material dispute between the parties. Evidence that Pine Manor was used primarily for business purposes might make it less likely, in the factfinder's eyes, that Gibson kept jewelry there. *See id.* at 873 ("[T]he outcome of the jewelry claim depends in part on the factfinder's assessment of Gibson's credibility on the issue of whether he kept jewelry at Pine Manor.").

Further, this evidence would not confuse or mislead the jury, since it can be made clear through a jury instruction or otherwise that the use of the fine arts and jewelry is not important, but whether the claimed items were at Pine Manor at the time of the fire is.

**Plaintiff's Motion *in Limine* No. 2**

Gibson moves to bar Anitra Kyees' expert testimony regarding "fine art," "decorative fine art," and "decorative item." The motion is denied.

Expert testimony is admissible if it satisfies Federal Rule of Evidence 702 and the standards set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The burden of

establishing admissibility lies with the expert's proponent, *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009), and the inquiry consists of three parts: (1) whether the witness is qualified; (2) whether her methodology is reliable; and (3) whether her testimony will help the factfinder understand the evidence or determine a fact in issue, *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010); *see also Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) ("In other words, the district court must evaluate: (1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." (emphases in original)).

In her report, Kyees explains that her task was "to review 356 items by photographs only and determine if the items are of fine art, Decorative Fine Art, or a decorative item with no historical value or artistic merit." Kyees' Rep. at 7, ECF 221-1. Each of these three categories--fine art, decorative fine art, and decorative item--receives its own definition in her report; they do not appear in the Policy. *Id.* Kyees then places each of the claimed items into one of these three categories. *Id.* at 16-38. In her opinion, items in the first two categories count as "fine arts" under the Policy, but items in the third category do not.

The Policy defines "fine arts" as: "Private collections of paintings, etchings, pictures, tapestries, art glass windows,

4

other bona fide works of art (for example, statues, antiques, rare books and manuscripts, porcelains, rare glass, crystal), and items of historical value or artistic merit." Policy at 56. Kyees' testimony will assist the trier of fact in applying the terms "bona fide works of art" or items of "artistic merit," which are terms a layperson could not easily apply. Her opinions are thus relevant.

Gibson argues that, even if Kyees' opinions are relevant, they should be barred under Rule 403 because they pose a danger of confusing the issues or misleading the jury, since Kyees' categories do not themselves appear in the Policy. However, Gibson can address this concern on cross-examination and closing argument by emphasizing for the jury that the bottom-line question is whether an item falls within the Policy's definition of "fine arts," not whether it falls within one of Kyees' categories. I am confident in the jury's ability to grasp this distinction and to understand that Kyees' opinions serve only as a tool in pursuit of deciding coverage as to each item.

**Plaintiff's Motion *in Limine* No. 3**

Gibson moves to bar testimony regarding payment made under the Deluxe House Coverage. The motion is granted.

Chubb opposes this motion not on the grounds that evidence regarding its payment to Gibson of approximately $8 million under the Deluxe House Coverage would help to establish any fact in issue, but rather that such evidence provides helpful background

5

without which the jury might be confused. *See Wilson v. Groaning*, 25 F. 3d 581, 584 (7th Cir. 1994) ("Evidence is relevant if its exclusion would leave a chronological and conceptual void in the story." (citation and internal quotation marks omitted)). But Chubb does not explain why this evidence is important to the jury's understanding of relevant events, other than to assert that the jury will "wonder" about what happened to the physical structure of Pine Manor. Mot. at 1–2, ECF 235. Additionally, this trial will be rife with monetary figures and valuations, so allowing this evidence in poses the risk of confusion. Accordingly, both because evidence pertaining to the Deluxe House Coverage is irrelevant to the issues to be decided and because any value it has in contextualizing the case is outweighed by its potential to unnecessarily complicate the trial, the evidence is excluded.

**Plaintiff's Motion *in Limine* No. 4**

Gibson moves to bar or limit expert testimony of Anitra Kyees for Chubb's failure to produce invoicing in compliance with Federal Rule of Civil Procedure 26(a)(2)(B)(vi). The motion is denied.

Rule 26(a)(2)(B)(vi) requires that an expert report contain "a statement of the compensation to be paid for the study and testimony in the case." Failure to include this information triggers Rule 37(c)(1), which provides for the sanction of exclusion "unless the failure was substantially justified or is harmless."

6

Chubb has worked with Insurance Inventory Consulting Service ("IICS") in this suit to evaluate the items Gibson claims under the Valuable Articles Coverage. For her services, Kyees submitted invoices to IICS, which in turn invoiced Chubb. Gibson complains that the only invoice he received detailing Kyees' work was IICS' version, and that he did not receive the invoices Kyees submitted to IICS prior to her deposition.

A review of the invoices provided by IICS, ECF 238-8 at 5, 8–9, which Gibson has long had access to, and those submitted by Kyees, ECF 238-9, reveals that they provide substantially the same information. Further, Gibson now has access to Kyees' invoices, and he does not explain how the delayed disclosure of those invoices prejudices him. He does not identify new information that came to light in Kyees' versions of the invoices or how he is unable to prepare for trial with any such new information, stating only in general terms that he is "unable to test or evaluate the work actually performed by Kyees as she documented it, and the jury is unable to fully evaluate the credibility of the opinions proffered by Kyees." Mot. at 3, ECF 223. Accordingly, any violation of the Rules was harmless.

**Plaintiff's Motion** *in Limine* **No. 5**

Gibson moves to bar Anitra Kyees' report and testimony concerning valuation. The motion is granted.

7

The same *Daubert* standards reviewed above apply here. As to the reliability factor in particular, the Seventh Circuit identifies the following as some factors that a court may consider: "(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community." *Gopalratnam*, 877 F.3d at 779. "Importantly, this list is neither exhaustive nor mandatory. Instead, a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability." *Id.* at 780 (emphasis in original) (citations and internal quotation marks omitted).

Chubb bears the burden of establishing the method Kyees used to arrive at her valuations is reliable, *see Lewis*, 561 F.3d at 705, but it fails to do so.

At her deposition, Kyees testified that she did not come up with the values in her report:

> Q. And the replacement value, that's the number that Michelle Smith gave you; right?
>
> A. That is correct.
>
> Q. And the restoration value, that's the number Michelle Smith gave you; right?
>
> A. Correct.

8

Kyees Dep. 74:23-75:4. That alone might not be a problem, since "[a]n expert witness is permitted to use assistants in formulating [her] expert opinion." *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (citations omitted). But an expert may not act as a "spokes[person]" by merely parroting conclusions reached elsewhere. *Id.* The evidence suggests that is what happened here, since in addition to admitting that she did not come up with the valuations herself, Kyees testified that she did not even know how the valuations were determined. *See* Kyees Dep. 21:21-23 ("Q. And you don't know what they did to determine the pricing; right? A. I do not know.").

After receiving the figures from IICS, without knowing how they were established, Kyees verified each one by "do[ing] some research" consisting of "look[ing] at three to five different items." *Id.* at 22:15-24. The result was that Kyees uniformly concluded that the values assigned by IICS were "pretty accurate," "fair number[s]," and "in the ballpark" of what she would have assigned. *Id.* at 22:15-23:17.[2] Based on this evidence, it defies

---

[2] Notably, Kyees agreed at her deposition that "it would be totally wrong to begin [the valuation determination] with wholesale numbers." Kyees Dep. 141:2-10; *see id.* at 141:6-10 ("Yes, you cannot use wholesale numbers unless it's--it was purchased at wholesale. But, obviously, I believe that these items were not purchased at wholesale."). It turns out that is exactly what IICS did. *See* Smith Dep. 21:6-11, ECF 237-1. If that method is, as Kyees says, "totally wrong," it is striking that the numbers that method produced were accurate enough for Kyees to adopt, without change, as her own. That is circumstantial evidence that whatever method

9

credulity that Kyees independently applied a reliable methodology to determine the figures in her report. As discussed below, Smith will be allowed to testify as to these valuations, since she is the one who came up with them in the first instance.

Accordingly, Kyees' method of accepting figures from Smith is not sufficiently reliable.

**Plaintiff's Motion *in Limine* No. 6**

Gibson moves to bar the testimony of Michelle Smith. The motion is denied.

Chubb offers Smith as a contents expert and seeks to introduce her opinions on whether the claimed items could be restored or needed to be replaced, and the estimated cost of doing so. The same *Daubert* principles discussed above apply to the admissibility of these opinions.

Gibson argues that Smith's method of determining whether an item could be restored is flawed because she relied entirely on photographs, rather than a physical inspection of each item. He highlights that the photographs Smith used do not show every angle of each item and do not allow her to inspect the odor of the items. Indeed, Smith acknowledges in her report that the "industry standard[] for a fire of this magnitude and size" is that, "[o]nce the residence is safe to enter, all contents are inspected to

---

Kyees used to verify the figures provided to her, it was not a reliable one.

determine what can be restored, cleaned or considered a total loss." Smith Rep. at 6, ECF 237-2. Somewhat perplexingly, Smith suggests in the methodology section of her report that this is what she did. *Id.* (stating "I approached this fire loss claim in the same manner as the many fire and contents loss claims I have worked on in 27 years in this industry" before outlining physical inspection as the first step). But she then clarifies that "[a]lthough [she] was unable to complete an on-site physical inspection of contents, and all conclusions were based solely on photo images and written information, [she] did follow industry standards." *Id.* at 7.

Smith's method of assessing whether items could be restored, versus replaced, is sufficiently reliable. Gibson does not dispute that she is qualified in general to decide whether an item can be restored or must be replaced, based on her 27 years in the industry, and I am not persuaded that performing this same assessment through photographs renders it unreliable.

Furthermore, Smith's opinions regarding what it would cost to restore these items survive Gibson's motion because she adequately describes the method she used to arrive at those opinions. Gibson complains that Smith "did not obtain pricing for the materials that she claims would be required; and has not identified the materials that would be required to restore the damaged property." Mot. at 3, ECF 225. But Smith determined the type of work needed

11

to restore each item, and then used an identified software to approximate the cost of performing that restoration work. *See* Smith Rep. at 261–280. If Gibson thinks that there is a better method, or that the software Smith used did not produce the right results, he may question her about that at trial. Accordingly, Gibson's motion is denied as to Smith's opinions about whether each item could be restored rather than replaced, and about the restoration cost associated with each item.

Gibson also takes aim at Smith's opinions regarding the replacement values of each item, assailing her failure to keep records of the "comparables," i.e., the comparable items Smith found online or in brick-and-mortar stores to determine the cost to replace items. Whatever one might say about the lack of specificity about the items Smith researched to arrive at her valuations, the methodology she employed is sufficiently reliable. That methodology consisted of researching comparable items in order to arrive at valuations. "As a general rule, questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility." *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005); *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("The soundness of the factual underpinnings of the expert's analysis and the correctness of the expert's conclusions based on that analysis are

12

factual matters to be determined by the trier of fact, or, where appropriate, on summary judgment." (citations omitted)). The specifics of the items Smith researched are the "sources" of her opinions, so the better course here is to admit Smith's testimony regarding valuation and allow Gibson to cross-examine her about how she arrived at those opinions.

Similarly, while Smith was not able to pinpoint the markup she applied to the wholesale prices she researched in order to arrive at a retail price, that is a factual issue well-suited for trial. As above, Gibson does not contend that applying a markup to a wholesale price to obtain a retail price is a flawed methodology. And I conclude it is not.

**Plaintiff's Motion *in Limine* No. 7**

Gibson moves to bar or limit expert testimony based on defendant's non-compliance with Rule 26(a)(2). The motion is denied.

Rule 26(a)(2)(B)(ii) requires that an expert report contain "the facts or data considered by the witness in forming [her opinions]." As with other violations of Rule 26(a), discussed above, failure to include this information triggers Rule 37(c)(1), which provides for the sanction of exclusion "unless the failure was substantially justified or is harmless."

It is true that neither Kyees nor Smith included the data they used--the prices of comparable items--in determining

13

replacement values in their reports. Kyees' valuation opinions have already been excluded, so the motion is denied as moot as to those opinions. And Smith provided enough information about the factual bases for her opinions by explaining that she researched comparable items. With that information in hand, Gibson has been free to retain his own expert to perform a similar analysis. Furthermore, to the extent Smith's failure to include the specific comparables she relied on causes Gibson prejudice, it can be remedied by highlighting that fact for the jury on cross-examination.

As to Smith's opinions regarding restoration costs, Smith does not claim--or at least Gibson does not point to somewhere she does--that she determined restoration cost by considering which materials would be used in the restoration work. Rather, she considered the type of restoration that, in her opinion, needed to be performed, and then used a software to calculate the cost. Accordingly, she did not fail to disclose facts or data she relied on.

## II. Defendant's Motions

**Defendant's Motion *in Limine* No. 1**

Chubb moves to exclude non-party witnesses and prevent disclosure and/or access to trial testimony to witnesses. The motion is unopposed and is granted.

14

**Defendant's Motion** *in Limine* **No. 2**

Chubb moves to preclude evidence of Chubb's size, wealth, and resources. The motion is unopposed and is granted.

**Defendant's Motion** *in Limine* **No. 3**

Chubb moves to preclude "Golden Rule" and/or "Reptile Theory" arguments and tactics. The motion is granted in part and denied in part.

A "Golden Rule" argument asks the jurors to put themselves in the plaintiff's shoes. *See United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007). That line of argument is "universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *Id.* (quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989)).

Gibson opposes the motion because the request is "amorphous" and does not cite to specific evidence or argument. To the contrary, Chubb has sufficiently delineated the type of argument it seeks to preclude: argument that asks the jury to put itself in Gibson's shoes. *See, e.g.*, *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982) (reviewing one such argument where an attorney asked the jury, in closing argument, to "trade[] seats" with the plaintiff, to give him the "same consideration" and the "same deliberation as you would if you were a plaintiff in this case"), *aff'd*, 465 U.S. 752 (1984). Jurors will still be

15

allowed to draw upon their personal experiences to assess credibility and persuasiveness; Chubb's motion does not aim at that.

Gibson cites cases from the Second and Fifth Circuits suggesting that "Golden Rule" arguments are only prohibited on the issue of damages but are permissible on the issue of ultimate liability. *See Aurigemma v. Costco Wholesale Corp.*, No. 3:18-CV-1719 (OAW), 2023 WL 197044, at \*7 (D. Conn. Jan. 17, 2023); *Baxter v. Anderson*, 277 F. Supp. 3d 860, 863 (M.D. La. 2017). That is not the law in this jurisdiction, where the Seventh Circuit has stated in no uncertain terms that "a Golden Rule argument is never proper," *Teslim*, 869 F.2d at 328, and has so maintained even in criminal cases where damages are not at issue, *see id.*; *Roman*, 492 F.3d at 806.

Chubb also moves to preclude "Reptile Theory" arguments, which seek to "persuad[e] jurors to find in a plaintiff's favor by invoking the primal (or reptilian) parts of jurors' minds, which drives them to act to protect themselves or their community." *Ansari v. Jimenez*, No. 2:20-cv-10719, 2023 WL 4092249, at \*5 (E.D. Mich. June 20, 2023) (quoting *Aurigemma*, 2023 WL 197044, at \*7). But unlike the "Golden Rule" argument, which is clearly defined, Chubb's "Reptile Theory" request does not reference specific arguments. It is not clear, for example, what arguments would "invoke[e] the primal (or reptilian) part" of jurors' minds, and

16

Chubb does not elaborate enough to clarify. Accordingly, this portion of the motion is denied.

Finally, Chubb seeks to preclude argument or comment that jurors should "send a message" to Chubb. This portion of the motion is unopposed and is granted.

**Defendant's Motion *in Limine* No. 4**

Chubb moves to preclude argument or reference to Pine Manor as Gibson's "home." The motion is denied.

As explained above in connection with Gibson's first motion *in limine*, I previously held that the "business property" sublimit applied to Gibson's Deluxe Contents Coverage claim because the contents of Pine Manor were used for business purposes. *See Gibson*, 601 F. Supp. 3d at 297–98. Chubb's point is well taken that, in light of this prior ruling, gratuitous references to Pine Manor as Gibson's "home" would be misleading and unduly prejudicial under Rule 403.

Still, as Gibson points out, portions of the Policy include the terms "house" and "home." *See, e.g.*, Policy at 2, 32. Accordingly, a blanket order barring use of those terms would be too blunt a tool, *see Betts v. City of Chicago*, 784 F. Supp. 2d 1020, 1023 (N.D. Ill. 2011) (appropriate to exclude evidence *in limine* "only when the movant shows that the evidence is inadmissible on all potential grounds" (citation and internal

17

quotation marks omitted)), and objections to the use of those terms is better left for trial.

**Defendant's Motion** *in Limine* **No. 5**

Chubb moves to preclude evidence of or reference to Chubb's investigation and/or claim handling. The motion is granted.

Two aspects of Chubb's motion are unopposed and are granted. These include its requests to exclude evidence or argument related to other litigation or proceedings where Chubb is or was a party and to prohibit argument that Chubb or any insurance company generally profits from or seeks to avoid paying claims.

Furthermore, I agree with Chubb that the reasonableness of Chubb's handling of the claim is not at issue in this suit, so evidence and argument that goes only to this point is properly excluded. I do not understand Chubb's request to extend as far as Gibson suggests in his response. For instance, Gibson remains free to question Chubb's witnesses about whether they actually inspected the property at issue and how they arrived at their determinations insofar as such questions are relevant to issues at trial. With this understanding, I grant the motion.

**Defendant's Motion** *in Limine* **No. 6**

Chubb moves to preclude Eden Glasser from testifying about whether items sought for coverage constitute "fine arts." The motion is denied.

18

Chubb summarily argues that Glasser's report and Gibson's expert disclosures "did not list fine art as an area of [Glasser's] purported expertise or that she held opinions on whether any items kept at Pine Manor qualified as 'fine arts,' as that term is used in the Policy." Mot. at 1, ECF 219. Chubb also states that "Glasser's identification of items cannot fairly include opining about whether these items constitute fine art." *Id.* Beyond those assertions, Chubb fails to explain why this disqualifies Glasser as an expert on the issue of "fine arts," or to cite any relevant legal authority. Accordingly, Chubb's argument is waived. *See Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (finding undeveloped, unsupported arguments waived).

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 14, 2024